# EXHIBIT 1

DECLARATION OF LOUIS W. RINGGER III

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| CITY OF MURFREESBORO, TENNESSEE,<br><br>Plaintiff,<br><br>v.<br><br>BFI WASTE SYSTEMS OF TENNESSEE, LLC; REPUBLIC SERVICES OF TENNESSEE, LLC; and REPUBLIC SERVICES, INC.,<br><br>Defendants.<br><br>BFI WASTE SYSTEMS OF TENNESSEE, LLC,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>RUTHERFORD COUNTY, TENNESSEE,<br><br>Third-Party Defendant. | ) | Case No. 3:22-cv-00605<br>JUDGE RICHARDSON<br>MAGISTRATE JUDGE EVANS |

**DECLARATION OF LOUIS W. RINGGER III**

Pursuant to 28 U.S.C. § 1746, Louis W. Ringger III declares as follows:

1. I am an attorney licensed to practice law in the State of Tennessee, Board of Professional Responsibility No. 033674, and a partner in the firm of Davis, Johnston & Ringger, PC. I am counsel of record for Plaintiff City of Murfreesboro, Tennessee, in this action. I am admitted to the bar of this Court and did not appear in this matter pro hac vice. Sherrard Roe Voigt & Harbison, PLC is not acting as local counsel in this case. I have been practicing law in Tennessee since 2014 and was previously a judicial law clerk for a Justice of the Tennessee Supreme Court. I take seriously my responsibilities as an officer of the court. I have never been sanctioned or

disciplined by any court in which I have appeared or any state bar association. I make this Declaration upon personal knowledge, and I accept sole responsibility for each of the discrepancies identified in the Court's Order to Show Cause entered July 30, 2026 (Doc. 321).

2. I am the only signatory to the City's Response in Opposition to BFI's Motion for Protective Order, filed May 22, 2026 (Doc. 293). The electronic signature appearing on that filing is mine, and no other electronic or manual signature appears on it. The other attorneys whose names appear in the signature block of Doc. 293 did not sign or review that filing. I submit this Declaration and the accompanying Response on that basis, as the sole signatory to Doc. 293.

3. Responsibility for opposing BFI's Motion for Protective Order was assigned to me. I accepted that assignment. I drafted the Response, and I prepared the citations, quotations, and parentheticals the Court has identified in its Order.

4. No other attorney named in the signature block of Doc. 293 drafted the language the Court has identified, reviewed it, or was asked to review it. No other attorney or firm named in that filing had any role in creating the defects the Court has identified, and none of them bears any part of the responsibility for those defects.

5. The defects are mine. I do not attribute them to any other person, and I do not offer any circumstance in explanation of them as a justification for them. I accept responsibility for responding to the Court's Order, for curing the defects in the record, and for whatever remedy the Court deems necessary.

6. I have reviewed how the Response was drafted and have reconstructed, as fully as I am able, how each of the defects entered the document. They did not arise from a single cause.

7. I stated a proposition more broadly than the authorities supported. The sentence introducing the string citation at page 11 asserts that federal courts addressing renewed Rule 45

subpoenas to the same non-party characterize them as continuations of the original discovery rather than new requests. I drafted that sentence, and it was overstated. It should not have been framed in categorical terms, and the cited authorities did not support the proposition as stated. The Response presented those authorities as though they were directly on point. They were not. The explanatory parenthetical language, apart from the misplaced quotation marks, was included to support the overstated proposition, and that was a mistake. I should not have written the sentence that way, and I apologize for that.

8. The research underlying the Response was performed on Westlaw, to which my firm subscribes and which includes an artificial-intelligence-assisted research feature that produces a response to questions posed. To a lesser extent, for high level questions, I also conducted ordinary internet searches through Google, which now incorporates artificial intelligence features as well. The decision to use those tools was mine. Research reports generated by Westlaw's AI feature often state holdings in its own words. When such a statement is accurate, it reads on the page as the language of the opinion would read, and the difference between the two is not always apparent from the reports themselves. I placed quotation marks around language that appeared to me to be the language of the cited opinions. This was sloppy work and a now-obvious mistake. The step that would have identified the difference is returning to the opinion and confirming that the words appear there. As to the citations the Court has identified, I did not perform that step. Having chosen to use those tools, I was obligated to understand what verification of their output required and to perform that verification. Neither the tools nor my unfamiliarity with them excuses the result. The decision was mine, the drafting was mine, and the verification obligation was mine.

9. I enclosed language in quotation marks that was not quoted from the cited opinions. It was not the language of the court, and presenting it as though it were was improper. The quotation marks were mine to place and mine to verify. This was sloppy work on my part, and I regret it.

10. I attributed a proposition to a case that does not contain it. The phrase "specific prejudice or harm" appears neither in *Serrano v. Cintas Corp.* nor in Federal Rule of Civil Procedure 26(c). It originates in *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002), and is quoted in *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016). The Response attributes the phrase correctly to *In re Ohio Execution Protocol* at pages 9, 20, and 21. This error had two sources. The first is the research described above. The language was taken from Westlaw AI-supported research materials and placed in quotation marks, when it should not have been presented as quotation at all. The second arose in editing. The sentence originally carried a citation to *In re Ohio Execution Protocol* for the quoted language, and that citation was accidentally removed while the Response was being shortened for length before filing, leaving the quoted language attributed to *Serrano*. Once again, that was my mistake, and it was admittedly sloppy. The same error occurred with the citation to the decision of the Eastern District of Virginia, which was corrected in the Notice of Correction. I regret both making this error and not catching the *Serrano* issue before the Court brought it to my attention.

11. I did not compare each quoted phrase against the text of the opinion from which it was represented to have been taken. Reviewing a case on Westlaw and satisfying myself that it stood for the proposition I was citing it for is not the same task as confirming that language enclosed in quotation marks appears on the page. I performed the first task. I did not perform the second. Each defect the Court has identified would have been identified had I done so.

12. On May 29, 2026, BFI filed a Reply identifying citation defects in the Response. Doc. 299.

13. On June 8, 2026, the City filed a Notice of Correction. Doc. 301. The Notice withdrew the quotation marks from the *Rossi* and *Petrie* parentheticals, corrected the *Petrie* pinpoint citation, withdrew and replaced a citation that had been attributed to the wrong court, and revised a further sentence. It attached a Corrected Response and a redline reflecting each change. It stated my apology to the Court for the errors.

14. The Notice of Correction was responsive to BFI's Reply and corrected the citations BFI had placed in issue in that Reply. However, the Notice of Correction did not address all of the issues the Court has now identified, only those raised by BFI at that time.

15. I have completed Thomson Reuters training on the verification of authority and the proper use of Westlaw's research features, including the appropriate use of AI-assisted research on Westlaw, instruction on verifying quotation accuracy through Quick Check, and on the use of Litigation Document Analyzer to identify inaccurate citations and misstatements of law within a document. I have also completed Responsible AI for Lawyers: Ethical Limits, Judicial Scrutiny, and the Risks Attorneys Can't Ignore (2026 Edition), an on-demand continuing legal education program offered by myLawCLE. Documentation of completion is attached to the Response as Exhibit 2.

16. I recognize the seriousness of what occurred. I have examined how it occurred rather than looking away from it, and I have put measures in place so that it does not occur again.

17. This matter has weighed heavily on me, and I will not soon forget it.

18. I offer my sincerest apologies to the Court. I am also sorry for the burden these errors placed on the Court's staff and on opposing counsel, who spent time on a problem I created. That time should not have been required of them, and I regret that it was.

19. While I respectfully ask that no sanction be imposed, to the extent the Court concludes that a sanction is appropriate, I offer to pay the reasonable fees and costs opposing counsel incurred for the time they expended on this issue.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 5, 2026.

/s/ Louis W. Ringger III
Louis W. Ringger III